**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREA BANKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 6614 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| JACKSON PARK HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, Andrea Banks, brought this action for discrimination, harassment, and retaliation against her former employer, Jackson Park Hospital. Jackson Park Hospital moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The Court grants the motion for the reasons explained below.

**BACKGROUND**

    Plaintiff was first diagnosed with post-traumatic stress disorder ("PTSD"), depression, and anxiety in 2014. She was in therapy as of January 7, 2016, the date she began employment with defendant, Jackson Park Hospital, as a registered nurse. In February 2016, plaintiff had a conversation at work with a medical resident in which plaintiff told the resident that she was dealing with mental illness. Thereafter, certain of plaintiff's coworkers began harassing and bullying her; plaintiff theorizes that these coworkers may have overheard her conversation with the resident. One of those coworkers went through plaintiff's bag, which contained her medication. Plaintiff reported the incident, but it was not investigated. During a shift that began on the evening of July 7, 2016 and ended on the morning of July 8, 2016, plaintiff had an encounter with the same coworker, who called plaintiff a bitch and a dumbass and wanted to fight with her. Plaintiff became upset and nauseated, had chest pains, and was crying uncontrollably. She reported the incident to a supervisor. After her shift ended on July 8, 2016, plaintiff did not return to work at the hospital.

    From July through October 2016, plaintiff submitted to defendant's human-resources department several letters from her therapists in which they stated that they were treating plaintiff for various symptoms associated with job-related stress and that plaintiff had been unable to return to work since July 8. (ECF No. 108-3, Pl.'s Ex. 3.) Some of the letters also included the dates of plaintiff's next therapy appointment. On September 1, 2016, plaintiff sent a letter to the hospital's president in which she stated that she had reported harassment and a hostile work environment to her superiors, who had failed to take prompt and corrective action, and that she had sent defendant medical documentation to support her absence from work due to job-related stress. (ECF No. 108-14, Pl.'s Ex. 16.)

On October 11, 2016, plaintiff received a letter dated September 27, 2016 from defendant's human-resources director, stating that plaintiff had not reported to work since July 7, "although [she] was on the schedule through the end of August," she had provided notes excusing her failure to be at work through August 19, but not since then, nor had she "called off" her absences. As a result, the letter stated, plaintiff was in violation of the union contract. The letter further stated that because defendant had not received any updated information pertaining to plaintiff's absences or her expected return-to-work date, her employment was terminated, effective September 27, 2016. (ECF No. 108-4, Pl.'s Ex. 4.)

On August 20, 2018, plaintiff filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was subjected to a hostile work environment, harassment, and bullying, and was wrongfully terminated, and that defendant discriminated against her based on her disability and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act ("ADA"). (ECF No. 1, Compl., at 8.) The EEOC issued a Dismissal and Notice of Rights on August 23, 2018.

On September 27, 2018, plaintiff filed the instant complaint for violation of the ADA. Defendant moves for summary judgment.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019). The Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmovant—here, plaintiff. *See Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Jackson v. Ill. Dep't of Com. & Econ. Opportunity*, No. 21-1168, 2022 WL 3009598, at *3 (7th Cir. July 29, 2022) (citation omitted).

Defendant's first argument is that plaintiff's claims are time-barred because she filed her EEOC Charge more than 600 days after her employment was terminated, well past the filing deadline. In a deferral state such as Illinois, a plaintiff who asserts ADA claims has 300 days from the alleged discriminatory or retaliatory act to file a charge with the EEOC. See 42 U.S.C. § 12117(a) (adopting the charge-filing requirements of Title VII, 42 U.S.C. § 2000e–5(e)(1)); *Huels v. Exxon Coal USA, Inc.*, 121 F.3d 1047, 1049 (7th Cir. 1997) (applying Title VII's filing requirements to an ADA claim); *see also Chatman v. Bd. of Educ.*, 5 F.4th 738, 744 (7th Cir. 2021) (Title VII).

Plaintiff does not dispute that she filed her Charge after the 300-day period lapsed but contends that this Court should apply equitable tolling to deem her claims timely because her mental-health issues rendered her unable to comply with the deadline. "A plaintiff whose mental or physical impairment prevents her from complying with the statute of limitations may invoke

equitable tolling." *Gray v. Potter*, 115 F. App'x 891, 894 (7th Cir. 2004) (citing *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). "The Supreme Court has cautioned lower courts to apply the doctrine of equitable tolling only 'sparingly' in order to preserve the procedural requirements set by Congress." *Palmer v. Ind. Univ.*, 31 F.4th 583, 588-89 (7th Cir. 2022) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002)). Equitable tolling is reserved for "rare cases," *Perkins ex rel. Est. of Perkins v. Brennan*, 821 F. App'x 630, 632 (7th Cir. 2020) (citing *Madison v. U.S. Dep't of Lab.*, 924 F.3d 941, 946-47 (7th Cir. 2019)), and "only upon a strong showing that the medical condition *actually* prevented the complaining party from satisfying the limitations requirement," *Gray*, 115 F. App'x at 894. "The plaintiff bears the burden of showing that though she 'diligently' pursued her claim, 'extraordinary circumstances' beyond her control prevented her from acting timely." *Perkins*, 821 F. App'x at 632 (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016), and *Sparre v. U.S. Dep't of Lab.*, 924 F.3d 398, 402-03 (7th Cir. 2019)).

In support of her argument that her mental illnesses that date back to 2014 warrant the application of equitable tolling, plaintiff relies upon affidavits from two of her children, Andreanna McClure ("Andreanna") and Armani Winston-Banks ("Armani"). Andreanna states that she has always resided with plaintiff and was in high school when plaintiff worked at Jackson Park Hospital and was terminated from employment there in 2016. According to Andreanna, plaintiff became depressed while working at the hospital and stopped socializing. She recalls that after the termination, plaintiff became severely depressed and isolated herself, stopped transporting Andreanna to and from school and attending school meetings she normally attended, and left it to Andreanna's older brothers to cook dinner and help with her homework. (ECF No. 108-9, Aff. of Andreanna McClure.) Andreanna further states that she hated high school because she did not have plaintiff's support due to her difficulties. As for Armani, he states that in 2016, he was in his second year of college and resided with plaintiff. He noticed a change in plaintiff's behavior while she was employed at Jackson Park Hospital; she wanted to be alone in her room, frequently cried and even vomited, and was very depressed and sad. Plaintiff could not handle daily or family activities. Armani was unable to stay on campus and his grades fell because he had to take care of his siblings, cook, clean, do laundry, and help his sister with her homework. Due to plaintiff's condition, he had to get a job to help pay the bills. (ECF No. 108-18, Aff. of Armani Winston-Banks.) In addition to her children's affidavits, plaintiff also cites the undisputed fact that during her deposition in this case on June 8, 2021, she had a panic attack so severe that the deposition was suspended and she was transported from her counsel's office to Northwestern Hospital, where she received two medications and was discharged. Plaintiff subsequently had follow-up care.

Furthermore, plaintiff points to a number of unsworn letters, addressed "to whom it may concern," which according to plaintiff contain "supporting documentation from various medical providers she had over the years." (ECF No. 109, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 7.) Plaintiff's Exhibit 5 consists of two letters from Michele Morais, M.D. In the first letter, dated February 2020, Dr. Morais states that plaintiff "obtained medical treatment for her psychiatric diagnoses" during the 300-day EEOC filing period. (ECF No. 108-5, Pl.'s Ex. 5, at 1.) It is unclear from the letter whether that statement is based on Dr. Morais's personal knowledge. In the second letter, dated February 2019, Dr. Morais states in pertinent part that plaintiff "is receiving psychiatric care"; she "has a diagnosis of severe recurrent major depressive disorder, posttraumatic stress disorder and generalized anxiety disorder"; her illnesses "have been chronic and resistant to

treatment"; her "emotional difficulties have significantly impaired her overall psychosocial functioning and cognitive abilities[,] limiting her performance of activities of daily living and holding stable employment"; and "[p]er record review, [plaintiff's] illness fluctuates with periods of severe psychosocial dysfunction, as supported by clinical documentation on March 2016. As a result of active, severe psychiatric symptoms I do not believe [plaintiff] retained the cognitive or emotional abilities at that time, to pursue a lawsuit which was subsequently sought by her during a time of greater emotional and cognitive stability." (*Id.* at 2.) It is unclear from the letters whether Dr. Morais personally treated plaintiff in 2016 or 2017.

Plaintiff's Exhibit 8 is a letter dated April 2022 from Sandra Kato, Ph. D., a qualified mental-health therapist, who treated plaintiff from April 2014 through November 2016. Dr. Kato states that plaintiff "presented with symptoms that resulted in an initial diagnosis of Major Depressive Disorder and Posttraumatic Stress Disorder (PTSD)," and she explains the general functional consequences of PTSD. (ECF No. 108-6, Pl.'s Ex. 8.) Regarding plaintiff specifically, Dr. Kato states that she experienced visual hallucinations when experiencing stress, and she opines that plaintiff's diagnosis "could easily explain her failure to meet timely deadlines in general and specifically account for her failure to meet her court filing deadline" and that plaintiff's symptoms associated with PTSD and depression "interfered with her ability to actualize" her career aspirations of helping others. (*Id.*)

Plaintiff's Exhibit 9 is a letter dated April 2022 from Tatum Stewart, a licensed clinical social worker who began treating plaintiff in October 2021. Stewart states that plaintiff has been diagnosed with PTSD. Like Dr. Kato, Stewart describes common symptoms of PTSD. Stewart explains what plaintiff "described" and "report[ed]" to her about plaintiff's struggles when her employment was terminated, and she states an opinion that plaintiff "missed her deadline to file this Workplace Discrimination case because of the severity of her PTSD symptoms that she was experiencing for months following her termination from Jackson Park Hospital." (ECF No. 108-7, Pl.'s Ex. 9, at 2.) Stewart does not state a basis for this conclusion. (*Id.*)

Plaintiff's Exhibit 19 is a letter dated April 2022 from Natalia Ruiz, a licensed clinical psychologist, who states in relevant part that since June 2019, plaintiff has been consistently attending meetings of a "DBT Skills-Based" psychotherapy group facilitated by Ruiz. (ECF No. 108-17, Pl.'s Ex. 19.) The goal of the training is to "help individuals change behavioral, emotional, thinking, and interpersonal patterns associated with problems in living." (*Id.*) According to Ruiz, plaintiff was referred to the group by psychiatrist Michelle De Souza, M.D., and at the time of the referral, plaintiff "carried diagnoses" of "Major Depressive Disorder, Anxiety Disorder, and [PTSD]." (*Id.*) PTSD entails, among other things, "avoidance of stimuli associated with the traumatic event(s)." (*Id.*)

Defendant argues that the Court should strike or exclude these letters for two reasons. The first is that although Dr. Morais, Dr. Kato, Stewart, and Ruiz purport to opine on plaintiff's medical condition and mental state, plaintiff failed to disclose them as experts. This Court recently received this reassigned case and did not oversee discovery. It does appear that plaintiff did not disclose any experts, but the Court need not delve into the disclosure issue because defendant is correct that the letters constitute inadmissible hearsay. Hearsay evidence, unless it falls within a recognized exception, is not competent summary-judgment evidence. *See, e.g.*, *Gunville v. Walker*, 583 F.3d

4

979, 985 (7th Cir. 2009) (a party may not rely on inadmissible hearsay to oppose a motion for summary judgment). The statements in the medical providers' letters are unauthenticated and unsworn. Plaintiff offers them to prove the truth of the matters asserted, and they do not fall under any hearsay exceptions.[1] Therefore, the Court will not consider them.

But assuming for purposes of defendant's motion that the Court did consider the providers' letters, those letters along with plaintiff's other evidence are still insufficient to justify equitable tolling. The difficulties plaintiff encountered during her deposition were unfortunate yet have little if any bearing on her abilities several years earlier, in 2016 and 2017. Neither the providers nor plaintiff's children set out specific facts demonstrating that plaintiff's mental condition rendered her unable to file a charge throughout the entire 300-day filing period or even for a majority of that period. Dr. Morais acknowledged that plaintiff's illnesses "fluctuate," and her opinion that plaintiff did not have the ability "at that time" to pursue a lawsuit is stated vaguely (or alternatively, it can be interpreted as being limited to March 2016). Many of the providers' and the children's observations also pertain to plaintiff's condition at a time outside the 300-day filing period. None of the providers seem to have treated plaintiff in 2017, and their views are couched only in generalized terms.

Moreover, there is undisputed evidence that during the relevant time frame, plaintiff was capable of taking several different actions to invoke her legal rights and seek remedies. Plaintiff filed a grievance with her union regarding the termination of her employment and regularly communicated with her union representative and provided him with documents. She attended a grievance meeting at the hospital at some time during the 300-day period. Plaintiff applied for unemployment compensation in October 2016 and appealed the state agency's initial denial of benefits. In December 2016, plaintiff attended a hearing in her unemployment-compensation case. Plaintiff applied for social security disability benefits, but her claim was denied in the summer of 2017. Plaintiff also was able to work intermittently during this time. One of her healthcare providers, Dr. Shirley Harvey, cleared plaintiff to return to work full time without restrictions as a labor and delivery nurse beginning October 5, 2016. Plaintiff worked for a nurse-staffing agency and in February 2017 worked as a traveling nurse. She applied for employment at another hospital and was employed there in June 2017. Plaintiff was never hospitalized during the limitations period. It is clear from the record that while plaintiff's mental illnesses were taxing and made daily life a struggle for her, they did not reach the level of actually preventing her from timely filing an EEOC charge. *See Gray*, 115 F. App'x at 894 (holding that plaintiff's medical conditions did not warrant equitable tolling where plaintiff's "aggressive quest for reinstatement," which involved telephone calls, letter-writing, and in-person appointments, showed that she was "mentally and physically capable of contacting a counselor"); *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (holding that a habeas-corpus petitioner was not entitled to equitable

---

[1] The letters are not admissible under the business-records exception contained in Rule 803(6) of the Federal Rules of Evidence because there is no indication that they were created and kept in the regular course of business but rather specifically created for this litigation. Nor are the letters admissible under Federal Rule of Evidence 803(4) as statements made for purposes of medical diagnosis or treatment. That exception applies only to statements made by the patient. *Martin v. Nicklow*, 499 F. App'x 569, 573 (7th Cir. 2013).

5

tolling where he failed to show that his mental illness affected him during the relevant time period to such an extent that he qualified for the "extraordinary remedy" of equitable tolling).

The decisions plaintiff relies upon do not support equitable tolling of her claims. Rather, they all suggest that a "high threshold of incapacitation is required before a court will grant equitable tolling to extend the time limits for a claim," *Angiulo v. United States*, 867 F. Supp. 2d 990, 1002 (N.D. Ill. 2012) (rejecting the application of equitable tolling where plaintiff failed to allege that his anxiety, stress disorder, and major depression during the relevant time period were of such severity that he was in fact prevented from filing his administrative complaint on time). (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 6-7 (citing, in addition to *Angiulo*, *Miller v. Runyon*, 77 F.3d 189 (7th Cir. 1996) (rejecting the application of equitable tolling where, apart from a brief manic episode, plaintiff was "*compos mentis*" during the relevant time frame and attended college); *Clifford ex rel. Clifford v. United States*, 738 F.2d 977 (8th Cir. 1984) (applying equitable tolling where plaintiff was comatose and no guardian had been appointed for him during the relevant period); *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979) (reversing dismissal of medical-malpractice action and remanding for factfinding on claim accrual where plaintiff had had two lobotomies and was incapacitated for decades); *Dundon v. United States*, 559 F. Supp. 469 (E.D.N.Y. 1983) (applying equitable tolling during the period when plaintiff-decedent was comatose, where his condition was allegedly caused by defendant's physicians)).

Plaintiff has failed to demonstrate that equitable tolling is appropriate; therefore, the Court will grant defendant's motion for summary judgment. In light of this ruling, the Court need not reach defendant's argument as to the merits.

## CONCLUSION

Defendant's motion for summary judgment [125] is granted. Judgment will be entered in favor of defendant and against plaintiff. Civil case terminated.

**DATE:** November 29, 2022

*Ronald A. Guzmán*

**Hon. Ronald A. Guzmán**
**United States District Judge**